UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
:
CARLIN UPTON POWELL,                               : Case No. 1:17-cv-1302
:
        Plaintiff,                              :
:
vs.                                                : OPINION & ORDER
                                                                                                      : [Resolving Docs. 17, 18, 20, 33, 34]
MEDICAL DEPARTMENT CUYAHOGA                        :
COUNTY CORRECTIONAL CENTER, *et al.*,              :
:
        Defendants.                             :
:
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Carlin Powell is a pre-trial detainee in the Cuyahoga County Correctional Center.[1] He has filed this lawsuit against a variety of defendants alleging they were deliberately indifferent to his medical needs in violation of the Eighth Amendment and alleging they violated the Interstate Agreement on Detainers.[2] The Defendants move to dismiss or for judgment on the pleadings.[3] Plaintiff Powell moves to dismiss his claim against the Medical Director of the State of Ohio.[4]

For the reasons that follow, the Court **GRANTS** the motions to dismiss the claims against the state medical director and the Cuyahoga County Defendants'[5] motion for judgment on the pleadings. The Court **GRANTS IN PART** and **DENIES IN PART** the Doctor Defendants'[6] motion for judgment on the pleadings.

## I. BACKGROUND

Powell arrived at the Cuyahoga County Correctional Center around May 23, 2016.[7] According to his complaint, he is disabled as a result of "previous spinal surgery fusions" in his "lower

---

[1] Doc. 10 at 1.
[2] *See generally* Doc. 1.
[3] Docs. 17, 18, 20, 33.
[4] Doc. 34.
[5] The Cuyahoga County Medical Director and the Director of Cuyahoga Correctional. Doc. 1 at 2.
[6] Doctor John Yourself; Doctor Alan Gatz; Doctor Rekha Ujla; Doctor Albert Coreno; Doctor Leslie Koblentz; and Doctor Thomas Tallman. *Id.* All of these defendants are sued in both their official and personal capacities. *Id.*
[7] *Id.* at 5.

back and spine" and has a history of "pulmonary embolisms (blood clots) in [his] lungs, arms[,] and legs."[8] Because of his medical conditions, he was transported by plane rather than car from North Carolina to Cleveland.[9]

When he arrived at Cuyahoga Correctional, he informed authorities there of his disability.[10] He alleges that he was told by a doctor that the facility only had Motrin available for "pain or nerve treatment."[11] Because Powell is allergic to Motrin and Cuyahoga Correctional does not provide the nerve medication he was apparently prescribed when he was in North Carolina, the Cuyahoga Correctional doctor told Powell that he "was currently going to just be out of luck."[12]

Powell alleges that he was assigned to sleep on a thin mattress on his cell's concrete floor.[13] As a result of his sleeping arrangements and denial of medication, he alleges that he suffered "excruciating pain."[14]

Powell filed a grievance over his sleeping arrangements and over the denial of medication.[15] A doctor came by his cell and recommended that he be given a medical mattress until a bottom bunk became available.[16] Nonetheless, Plaintiff Powell alleges that—even though bottom bunks became available—he was forced to remain on the floor without a medical mattress until October 2016.[17] At that point, he was moved to a bottom bunk but still did not receive any nerve medication.[18]

Around January 2, 2017, Plaintiff Powell was moved to another cell, where he was assigned the top bunk.[19] This forced Powell to, once again, sleep on a mattress on the floor.[20]

Despite numerous trips to the prison infirmary, Powell remained on the floor and was not

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 5–6.
[16] *Id.* at 6.
[17] *Id.*
[18] *See id.*
[19] *Id.*
[20] *Id.* at 7.

given nerve medication.[21] At one point, Defendant Doctor Ujla confirmed that his sleeping arrangements could cause pain and worsen his condition.[22] Yet Powell was not moved. Instead, he was promised an X-Ray that he never received.[23] He did receive assignment to physical therapy.[24]

Plaintiff Powell filed this lawsuit against the Medical Department of the Cuyahoga County Correctional Center, MetroHealth Systems, several doctors, Marcus Harris, the Cuyahoga County Medical Director, the Director of Cuyahoga Correctional, and the state medical director.[25] The Court dismissed his claims against the Medical Department and MetroHealth.[26]

The Doctor Defendants and the Cuyahoga County Defendants move for judgment on the pleadings.[27] Both Plaintiff Powell and the state medical director move to dismiss the claims against the medical director because Powell is not yet a state prisoner.[28]

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim or motion for judgment on the pleadings, the Court construes the complaint in the light most favorable to the nonmoving party, accepting its allegations as true, and drawing all reasonable inferences in favor of finding the complaint sufficient.[29] In order to survive a motion to dismiss or for judgment on the pleadings, the complaint must allege sufficient facts "to state a claim for relief that is plausible on its face."[30] While

---

[21] *Id.* at 7–11. There is some indication in one portion of the complaint that Powell was not sleeping on the floor after March 8, 2017, *id.* at 7, but in another part of the complaint Powell seems to allege that his improper sleeping accommodations are or were ongoing after that date, *id.* at 10. Because the Court is required, at this stage, to view the complaint in the light most favorable to Plaintiff Powell, the Court assumes that he remained on the floor until at least until this complaint was filed. In any event, even if Powell was no longer sleeping on the floor after March 8, 2017, the Court's analysis would remain unchanged.

[22] *Id.* at 7.

[23] *Id.* at 7–9.

[24] *Id.* at 8–10. Powell also alleges that one doctor touched him in a way that made him feel uncomfortable, *id.* at 8, but he never claims that the touching was not a necessary part of the doctor's examination. Indeed, the allegations in his complaint suggest that the doctor was attempting to uncover the source of Powell's discomfort. *Id.* As a result, the Court does not view this touching as a basis for a claim against any of the Defendants.

[25] *Id.* at 2.

[26] Doc. 10.

[27] Docs. 17, 20. Plaintiff opposes. Doc. 37. The Doctor Defendants reply. Doc. 41.

[28] Docs. 18, 33, 34.

[29] *Cates v. Crystal Clear Techs.*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bikerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)); *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

[30] *See Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Case No. 1:17-cv-1302
Gwin, J.

"detailed factual allegations" are unnecessary, a counter-plaintiff must provide more than a "formulaic recitation of the elements of a cause of action."[31]

### III. ANALYSIS

### A. Eighth Amendment Claims

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs."[32] To state an Eighth Amendment claim, a prisoner must allege that he suffers from a sufficiently serious medical condition and that jail personnel knew of and disregarded that need despite an excessive risk to the inmate's health or safety.[33]

#### 1. Remaining County Defendants

The Court begins with the remaining claims against the Cuyahoga County Defendants. Both these defendants have been sued in their official capacities, which means that Plaintiff Powell has essentially brought a *Monell* claim against the County.[34] But to state a valid *Monell* claim, Powell must allege not only that his constitutional rights were violated but also that that violation was the result of a policy or custom of the County.[35] Powell has made no such claim here.

Moreover, although Powell asserts an individual capacity claim against the Director of Cuyahoga Correctional, Powell does not allege that the Director participated personally in the violation of his constitutional rights. His only connection to the difficulties Powell encountered appears to be that he is the supervisor of the jail where Powell is incarcerated.[36]

---

[31] *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Engler*, 862 F.3d at 575 (quoting *Ashcroft*, 556 U.S. at 678)).
[32] *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).
[33] *Richmond v. Huq*, 885 F.3d 928, 938–39 (6th Cir. 2018).
[34] *Fox v. Van Oosterum*, 176 F.3d 342, 347–48 (6th Cir. 1999).
[35] *Id.*
[36] Powell's allegation that all of the Defendants helped "try to cover up the actions of the Medical Department and its" doctors, Doc. 1 at 10, is far too conclusory to support any sort of supervisory liability claim.

Case No. 1:17-cv-1302
Gwin, J.

There is no § 1983 *respondeat superior* liability.[37] Rather, the plaintiff must show that the supervisor engaged in some "active unconstitutional behavior."[38] "[T]he plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [officials].'"[39] Because Powell has failed to make such an allegation here, his individual capacity claim against the Director fails.

The Court will therefore **GRANT** the Cuyahoga County Defendants' motion for judgment on the pleadings as to Powell's Eighth Amendment Claim.

### 2. Doctor Defendants

The Court finds that Powell has stated a plausible Eighth Amendment claim against the Doctor Defendants in their individual capacities.

Read in the light most favorable to Plaintiff Powell, the complaint alleges that Powell suffered from severe pain as a result of prior back surgeries and inadequate housing conditions.[40] It further alleges that, despite the fact that he had earlier been prescribed nerve and pain medications, he was not provided any medication by the Doctor Defendants.[41] Instead, they merely offered him Motrin and, upon being told that he was allergic to Motrin, gave him nothing.[42] Finally, the complaint alleges that the Doctor Defendants were aware of Plaintiff Powell's medical condition because his medical records were on file and he was flown to Cleveland rather than transported by road because of his medical situation.[43]

---

[37] *Ashcroft*, 556 U.S. at 676–77.
[38] *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).
[39] *Id.* at 242 (quoting *Shehee*, 199 F.3d at 300).
[40] Doc. 1 at 5, 11.
[41] *Id.* at 5, 7, 9–10.
[42] *Id.* at 5.
[43] *Id.* at 5, 9.

Case No. 1:17-cv-1302
Gwin, J.

At this point of the litigation, these allegations are sufficient to support a claim that Powell suffered from a serious medical condition and that the Doctor Defendants acted with deliberate indifference to that condition.[44]

The Doctor Defendants protest that Powell has not specifically alleged which doctors on which occasions denied him treatment and that they are entitled to qualified immunity.[45] But the claim alleges that all of the doctors denied him nerve and pain medication. That is enough, especially since the Court construes *pro se* complaints liberally.[46] And the failure to provide a defendant with necessary medication can be a constitutional violation. So the Doctor Defendants are not entitled to qualified immunity at this early stage of the case.[47]

The Court will therefore **DENY** the Doctor Defendants' motion for judgment on the pleadings as to the Eighth Amendment claims related to the denial of medication.

That said, the complaint does not allege that the Doctor Defendants had any ability to change Plaintiff Powell's housing arrangements at the jail other than by making recommendations to prison authorities. It appears from the complaint that the Doctor Defendants recommended that Powell be provided a medical mattress and assigned to a bottom bunk when one became available.[48] As a result, the Court will **GRANT** the Doctor Defendants' motion for judgment on the pleadings as to Powell's housing assignments at the jail.

The Court will also **GRANT** the motion as to the official capacity claims against the Doctor Defendants. Like the official capacity claims against the Cuyahoga County Defendants, these are *Monell* claims.[49] They fail for the same reasons as the claims against the County.

---

[44] *See Richmond*, 885 F.3d at 939 ("Failure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation.").
[45] Dox. 20 at 1–4.
[46] *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004).
[47] *See Richmond*, 885 F.3d at 939 ("Failure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation."); *see also United States v. Lanier*, 520 U.S. 259, 271(1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question . . . .") (quotation marks omitted).
[48] Doc. 1 at 6.
[49] *Fox*, 176 F.3d at 347–48.

Case No. 1:17-cv-1302
Gwin, J.

**B. Interstate Agreement on Detainers**

Plaintiff Powell also asserts a claim under Article V(h) of the Interstate Agreement on Detainers.[50] That provision requires a state that has received a prisoner from another state to, among other things, "pay all costs of transporting, caring for, keeping, and returning the prisoner" until the prisoner is returned to his original place of incarceration.[51] Powell appears to allege that the Defendants have violated the Interstate Agreement by forcing him to pay for the (allegedly inadequate) medical services he has received at Cuyahoga Correctional.[52]

Because the Interstate Agreement "is a congressionally sanctioned interstate compact" it "is a federal law subject to federal construction."[53] And, as a result, prisoners who are denied their rights under the Interstate Agreement can sue to enforce them under 42 U.S.C. § 1983.[54]

Nonetheless, absent exceptional circumstances not alleged in the complaint in this case, Powell can only enforce his own rights under the Interstate Agreement.[55]

One purpose of the Interstate Agreement is to reduce the inconvenience to and harassment of prisoners resulting from shuttling them from state to state and prison to prison in order to resolve their pending criminal charges.[56] Towards that end, the Interstate Agreement does grant *prisoners* certain rights, including the right to demand a speedy transfer to a state where charges are pending and a timely resolution of those charges.[57]

But the Interstate Agreement is also designed to streamline transfers by providing "cooperative procedures" to resolve pending criminal charges one state wishes to pursue against a prisoner

---

[50] Doc. 1 at 3.
[51] Interstate Agreement on Detainers, 18 U.S.C. App. 2 § 2 art. v(h).
[52] Doc. 1 at 9.
[53] *Carchman v. Nash*, 473 U.S. 716, 719 (1985).
[54] *Cuyler v. Adams*, 449 U.S. 443, 449 (1981); *Cross v. Cunningham*, 87 F.3d 586, 588 (1998); *Schreiber v. Columbia Cnty*, No. 03-C-178-C, 2003 WL 23211629, at *4 (W.D. Wisc. May 8, 2003).
[55] *Sharona Props. v. Orange Vill.*, 92 F. Supp. 3d 672, 678 (N.D. Ohio 2015); *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1015–16 (N.D. Ohio 2011).
[56] *United States v. Bryant*, 612 F.2d 806, 810 (4th Cir. 1979).
[57] Interstate Agreement on Detainers, 18 U.S.C. App. 2 § 2 art. iii(a).

detained in another state.[58] Towards that end, the Interstate Agreement defines the rights and responsibilities of states vis-à-vis other states and the federal government, in addition to providing certain rights to prisoners. That is what Article V(h) of the Interstate Agreement does.

Without Article V(h), there might be confusion about which state is responsible for financing a prisoner's incarceration while he is in the receiving state—particularly since the Interstate Agreement provides that "[f]or all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending [s]tate."[59] But the Interstate Agreement says nothing about how a state is to finance a prisoner's detention or whether the state can recoup the costs of caring for a prisoner from the prisoner himself. It follows that the Interstate Agreement does not give prisoners a right to free medical treatment during their incarceration and that, for that reason, Powell cannot sue to enforce Article V(h).

The Court will therefore **GRANT** the Cuyahoga County and Doctor Defendants' motions for judgment on the pleadings as to the Interstate Agreement claims.

### C. Additional Claims

Defendant Marcus Harris, the Director of Inmate Health Services, has not filed an answer nor a motion as to the claims against him. The Court therefore does not address those claims.

Both Plaintiff Powell and the state medical director agree that the claims against the state medical director should be dismissed.[60] The Court will **GRANT** the motions to dismiss those claims.

### IV. CONCLUSION

For all of those reasons, the Court **GRANTS** the state medical director and Powell's motions to dismiss and the Cuyahoga County Defendants' motion for judgment on the pleadings.

---

[58] *Id.* §2 art. i.
[59] *Id.* § 2 art. v(g).
[60] Docs. 18, 33, 34.

The Court **GRANTS IN PART** and **DENIES IN PART** the Doctor Defendants' motion for judgment on the pleadings. The case will proceed as to Plaintiff Powell's Eighth Amendment claim against the Doctor Defendants in their individual capacities based on the denial of medication.

All of the claims against Defendant Harris remain pending.

IT IS SO ORDERED.

Dated: May 11, 2018                    *s/         James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE